IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| CHRIS SLAVICK, #A0765881, <br><br> Plaintiff, <br><br> vs. <br><br> STATE OF HAWAII, *et al.*, <br><br> Defendants. | Civil No. 26-00361 MWJS-RT <br><br> ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND |

### **ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND**

Before the court is pro se Plaintiff Chris Slavick's prisoner civil rights complaint filed under 42 U.S.C. § 1983.[1]  Dkt. No. 1.  In the complaint, Slavick alleges that dozens of defendants violated his rights in a variety of ways beginning in at least February 2024, during his incarceration at Halawa Correctional Facility (HCF).[2]  *Id.* at pgs. 18–47.

---

[1]     Slavick is currently incarcerated at Waiawa Correctional Facility.  VINE, https://vinelink.vineapps.com/search/HI/Person (select "ID Number"; enter "A0765881"; and select "Search") (last visited Aug. 6, 2026).

[2]     Slavick names as defendants:  (1) the State of Hawaiʻi; (2) the former Department of Public Safety; (3) the Department of Corrections and Rehabilitation; (4) Adult Corrections Officer (ACO) Kealoha; (5) ACO Aukustino Noga; (6) Program Coordinator Keoni Morreira; (7) Unit Team Manager (UTM) Todd Anzai; (8) Case Manager (CM) Win Fan; (9) Chief of Security (COS) Joanna White; (10) Warden Shannon Cluney; (11) Deputy Warden Lyle Antonio; (12) ACO Tuitama; (13) Nurse Mandy Feldt; (14) Nurse Cristina; (15) Sergeant (Sgt.) Manu; (16) Sgt. Calvin Lee; (17) Deputy Sheriff Matsumori;

After conducting the screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A, the court DISMISSES the complaint with partial leave to amend.

If Slavick wants to proceed with this action, he must file an amended pleading that cures the noted deficiencies in his claims on or before September 8, 2026. Alternatively, Slavick may inform the court in writing on or before September 8, 2026, that he would like to voluntarily dismiss this action under Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, and such a dismissal will not count as a "strike" under 28 U.S.C. § 1915(g). Failure to comply with the court's instructions could result in automatic dismissal of this action under Rule 41(b).

## BACKGROUND

The complaint alleges the following facts, which the Court accepts as true for the purposes of screening. *See Nordstrom v. Ryan*, 762 F.3d 903, 906 (9th Cir. 2014).

**A.    February 20, 2024, Grievance Restriction**

On February 20, 2024, Grievance Responders Diaz, Laux, Ogi, and Taniguchi sought to prevent Slavick from filing inmate grievances by "fabricat[ing] a . . . 'grievance restriction.'" Dkt. No. 1, at pg. 29. Unnamed ACOs also warned

---

(18) Deputy Sheriff Tominaga; (19) Grievance Responder Albert Diaz; (20) Grievance Responder Charles Laux; (21) Grievance Responder Leona Ogi; (22) Grievance Responder E. Taniguchi; (23) Lieutenant (Lt.) Yoshida; (24) Sgt. Gonzalves (Gonzalez); (25) UTM Janice Lepule; (26) UTM Sarah Alonzo-Cabardo; (27) Caseworker Lorie Zidik; (28) Caseworker Malia Scanlon; (29) Case Manager Patty Souza; (30) CM Desmond Jones. Dkt. No. 1, pgs. 1–15. Slavick sues the individual defendants in both their individual and official capacities. *Id.*

Slavick not to file grievances, and Nurse Feldt allegedly ordered Slavick's move to HCF's Special Holding Unit (SHU) in retaliation for complaining about her in a grievance. *Id.* According to Slavick, his access to the inmate grievance system was restricted from "2/20/2024—8/20/2025 to 8/5/2025—2/20/2027." *Id.* at pg. 30.

**B.      March 2024 "Cognitive Skills" Class**

In March 2024, CM Fan, UTM Lepule, UTM Alonzo-Carbado, and Caseworker Scanlon used "falsified and invalid write-ups to compel [Slavick's participation in] a 'cognitive skills' class." *Id.* at pg. 35. They allegedly did this in retaliation for Slavick's earlier "successful" lawsuits. *Id.* According to Slavick, CM Fan, Caseworker Zidik, and Caseworker Scanlon colluded to produce false reports, while UTM Lepule, UTM Alonzo-Carbado, and Caseworker Scanlon "fabricated a 'Notice of Programming.'" *Id.* at pg. 36. Lepule, Alonzo-Carbado, and Scanlon did not appear for a "hearing," but they falsely stated that Slavick had failed to appear. *Id.*

Slavick also alleges that UTM Alonzo-Carbado, CM Fan, CM Souza, COS White, Warden Cluney, Program Coordinator Morreira, and Nurse Feldt falsified documents to deny him access to a work furlough program and its associated medical care. *Id.* at pgs. 36, 38, 42–43. Sometime prior to these events, CM Jones attempted to force Slavick to sign an inaccurate medical waiver form. *Id.* at pg. 37.

## C.      September 22, 2024, Incident

On September 22, 2024, while Slavick was watching television in HCF's Module 4A-1, an inmate named Peaceful Baelo walked up behind Slavick and hit him in the head with a heavy, hard plastic tray. *Id.* at pg. 18. Rendered immediately unconscious, Slavick fell to the floor. *Id.* ACO Kealoha witnessed the incident from the "control box," but she and Sgt. Noga neither reported the incident nor requested medical care for Slavick. *Id.*

According to Slavick, Program Coordinator Morreira, UTM Anzai, and CM Fan had decided to house Baelo in Module 4A-1, soon after he was released from suicide watch. *Id.* at pgs. 18–19. Slavick describes Baelo as a psychotic and violent member of the USO gang. *Id.* at pg. 19. Other members of the USO gang were also housed in Module 4A. *Id.* On at least three prior occasions, members of the USO gang had attacked Slavick, including on February 8, 2013, August 2, 2018, and January 15, 2023. *Id.* Slavick describes Baelo as a Micronesian with a "demonstrated dislike of Caucasian/white men." *Id.* Slavick describes himself as a "[C]aucasion not from Hawaii." *Id.* at pg. 21.

Immediately after the incident, Slavick did not receive any medical care. *Id.* at pg. 20. He experienced various symptoms—including dizziness, loss of balance, and loss of consciousness—but no MRI or CAT scans were taken. *Id.* According to Slavick,

Nurse Cristina did not believe that the incident had occurred because it was not reported.  *Id.*

Slavick alleges that a group of officials including Warden Cluney, Deputy Warden Antonio, COS White, Sgt. Lee, Sgt. Manu, Cpt. Tuitama, Morreira, UTM Anzai, CM Fan, and UTM Alonzo-Carbado, Deputy Sheriff Tominaga, and Deputy Sheriff Matsumori initially prevented any investigation of Baelo.  *Id.* at pg. 21, 33.  According to Slavick, these defendants were aware that he had previously filed successful state and federal lawsuits against both prison officials and a private, prison-management company.  *Id.*  Slavick had also reported alleged criminal conduct by prison officials.  *Id.* at pg. 21.  Prison officials eventually contacted the Honolulu Police Department and Sheriff Division on October 11, 2024.  *Id.* at pg. 34.  Warden Cluney, Deputy Warden Antonio, COS White, and Sgt. Lee allegedly worked together to deprive deputy sheriffs access to closed-circuit television footage of the incident.  *Id.*

**D.    April 11, 2025, Incident**

On April 11, 2025, after taking a shower and returning to his cell in Module 4A-1, Slavick was attacked by an inmate named George Williams.  *Id.* at pg. 26.  Williams choked Slavick and punched his head and back.  *Id.*  Slavick describes Williams as a "USO gang punk" who had just been released from the SHU.  *Id.*  Immediately after the incident, nearby security staff did not call for back-up, and they refused to send Slavick for medical care.  *Id.*

According to Slavick, Warden Cluney, Deputy Warden Antonio, COS White, Sgt. Manu, Sgt. Lee, and UTM Anzai participated in housing members of the USO gang and "other gang members" in Module 4A. *Id.* at pg. 23. These defendants and CM Fan also decided to house in Module 4A "violent homosexuals" that trafficked and used drugs. *Id.* These defendants allegedly did these things because Slavick did not use drugs, he "opposed . . . homosexuality," and he "opposed . . . gang involvement and stupidity." *Id.* After the incident, Slavick was moved out of Module 4A. *Id.* at pg. 24.

Slavick alleges that after he requested medical care and sought to file a police report, prison officials retaliated against him by not filing the report and assigning him to a cell in a housing module that was dirty, lacked electric lights, had a leaky toilet and broken phone, and had no microwave or television. *Id.* at pg. 28.

**E.     July 3, 2025, Incident**

On July 3, 2025, while Slavick was waiting in line at HCF's commissary to pick up items he had ordered, Sgt. Gonzalez violently pulled on a mesh laundry bag that Slavick was holding. *Id.* at pg. 31. This caused "extreme" pain in Slavick's right hand, a hand that he had previously injured. *Id.*

According to Slavick, Sgt. Gonzalez injured him in retaliation for Slavick previously refusing to work for him at HCF. *Id.* at pg. 32. At some point after the incident, Sgt. Gonzalez allegedly sexually harassed Slavick, though it is unclear what

6

Sgt. Gonzalez is alleged to have done.  *Id.*  Slavick alleges that Sgt. Gonzalez said,

"[L]ook at me!  I'm a man!  Screw your lawsuits!"  *Id.*

### F.      Procedural History

Slavick commenced this lawsuit after signing the complaint on July 7, 2026.  *Id.* at

pg. 48.  In the complaint, Slavick asserts claims in twelve counts based on the events

described in the preceding sections.  *Id.* at pgs. 18–47.  These claims are based on the

following four legal theories:  (1) a failure to protect, *id.* at pgs. 18–19, 25–26; (2) the

denial of medical care, *id.* at pg. 20, 38–41; (3) retaliation, *id.* at pgs. 21–24, 27–28, 31–37,

42–47; and (4) a denial of access to the prison grievance process, *id.* at pgs. 29–30.

Slavick seeks "$300,000 . . . for each separate damage inflicted in each year beginning in

2021," and unspecified injunctive relief.  *Id.* at pg. 48.  The court granted Slavick in

forma pauperis status on July 29, 2026.  Dkt. No. 7.

**STATUTORY SCREENING**

The court is required to screen all in forma pauperis prisoner complaints filed

against government officials pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.  *See Byrd v.*

*Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).  Claims or complaints that are

frivolous, malicious, fail to state a claim for relief, or seek damages from defendants

who are immune from suit must be dismissed.  *See* 28 U.S.C. § 1915(e)(2)(B); *Lopez v.*

*Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A involves the same standard as that used under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Under this standard, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a particular defendant for specific misconduct. *See id.*

In screening a complaint, the court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010). If a complaint does not survive screening, the court must nonetheless grant leave to amend if it appears that the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130. When a claim cannot be saved by amendment, however, dismissal without leave to amend is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## DISCUSSION

**A.     Legal Framework for Slavick's Claims Under 42 U.S.C. § 1983**

All Slavick's claims are brought under 42 U.S.C. § 1983. "Section 1983 provides a cause of action against every person who, under color of law deprives another of rights, privileges, or immunities secured by the Constitution." *Cornel v. Hawaii*, 37 F.4th 527,

8

531 (9th Cir. 2022) (citation modified).  To state a claim under § 1983, a plaintiff must allege:  (1) a violation of a right secured by the Constitution or United States laws, and (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).

There are two situations in which a state official might be liable under § 1983. "First, plaintiffs may seek damages against a state official in [their] personal capacity." *Cornel*, 37 F.4th at 531 (citation modified).  "Second, state officials are 'persons' under § 1983 when sued for prospective injunctive relief."  *Id*. (citation modified).  This second situation applies "where a plaintiff alleges an ongoing violation of federal law, and where the relief sought is prospective rather than retrospective."  *Id*. (citation modified).

With these standards in hand, the court turns to the question of whether Slavick's complaint, in its current form, alleges a viable claim against any properly named defendant.

**B.     The Eleventh Amendment Bars Some of Slavick's Claims**

We begin by examining whether the defendants in Slavick's complaint are properly named.

Among the defendants named in Slavick's complaint are the State of Hawaiʻi, the former Department of Public Safety (DPS), and the Department of Corrections and

Rehabilitation (DCR).[3]  Dkt. No. 1, at pgs. 1–15.  These are not proper defendants.  "In the absence of consent, a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citation modified).  Because the State of Hawai'i cannot be said to have consented to this suit, it "is entitled to the protections of sovereign immunity under the Eleventh Amendment."  *Neal v. Shimoda*, 131 F.3d 818, 832 n.17 (9th Cir. 1997).  The same protections extend to the State's agencies, the former DPS and DCR.  *See Blaisdell v. Haw. Dep't of Pub. Safety*, 621 F. App'x 414, 415 (9th Cir. 2015) (mem.) (holding that a state prisoner plaintiff's "action against the Hawaii Department of Public Safety . . . is barred by the Eleventh Amendment").  And the Eleventh Amendment's protections apply "regardless of the nature of the relief sought," *Pennhurst*, 465 U.S. at 100.  Accordingly, although Slavick seeks both monetary damages and injunctive relief, all his claims against the State, the former DPS, and DCR are barred.  All claims against the State, the former DPS, and DCR are therefore DISMISSED with prejudice.

The remaining defendants named in Slavick's complaint are various officials named in their official and personal capacities.  But to the extent Slavick seeks money damages against state officials acting in their official capacities, the Eleventh

---

[3]    On January 1, 2024, the former Department of Public Safety was renamed the Department of Corrections and Rehabilitation.  *See* 2022 Haw. Sess. Laws Act 278, § 1 at 765-66; Haw. Rev. Stat. § 26-14.6(d) (2024).

Amendment bars these claims as well.  *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007).  Slavick's claims for money damages against individual defendants in their official capacities are therefore also DISMISSED with prejudice.

The Eleventh Amendment does not bar Slavick from seeking "damages against [individual] state officials in their personal capacities."  *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016).  Nor does it bar him from seeking prospective injunctive relief from individual state officials for ongoing violations of federal law.  *See Cornel*, 37 F.4th at 531.  But there is a separate problem with Slavick's requests for injunctive relief:  to the extent he seeks prospective relief from officials based on events that occurred on HCF, those claims are moot because Slavick is no longer incarcerated there.  *Wages v. Cox*, No. CV 24-00223, 2024 WL 3791186, at *2 (D. Haw. Aug. 13, 2024).  For reasons of mootness, therefore, Slavick's claims for injunctive relief against individual state officials are DISMISSED.

The upshot is that the only claims for which proper defendants have been named in this lawsuit are those seeking money damages against individual officials in their personal capacities.  But while these claims name proper defendants, they suffer from a different procedural problem:  in its current form, Slavick's complaint does not comply with the Federal Rules of Civil Procedure's joinder rules.  We turn to this issue next.

11

### C.      Slavick's Complaint Does Not Satisfy the Joinder Rules

Were Slavick bringing this lawsuit against a single defendant, joinder rules would not raise any complications:  a party may bring as many claims as it has against that opposing party.  Fed. R. Civ. P. 18(a).  But Slavick seeks to assert multiple claims against multiple defendants.  And there are rules that limit a plaintiff's ability to combine unrelated claims against multiple defendants into a single lawsuit.  Slavick's complaint, in its current form, does not satisfy these rules.

"To name different defendants in the same lawsuit, . . . a plaintiff must satisfy Rule 20 [of the Federal Rules of Civil Procedure], governing joinder of parties."  *Weeks v. Espinda*, No. 10-00305, 2010 WL 2218631, at *3 (D. Haw. June 2, 2010).  Rule 20(a)(2) allows multiple defendants to be joined in one action only if (1) any right to relief is asserted against them jointly, severally, or with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all defendants will arise in the action.  Fed. R. Civ. P. 20(a)(2)(A), (B).  "Unrelated claims involving different defendants belong in different suits."  *What v. Honolulu Police Dep't*, No. 13-00373, 2014 WL 176610, at *4 (D. Haw. Jan. 13, 2014).

Here, on the face of the current complaint, the court cannot say that Slavick's claims against dozens of officials belong in a single lawsuit.  Nothing suggests that one prison official was involved in all the events described in the complaint, nor does it appear that Slavick's claims arise out of the same transaction or occurrence, or a series

12

of transactions or occurrences. The fact that all Slavick's claims are based on events that occurred at HCF, without more, is not enough to join them in the same action. *See Woods v. Curry*, No. C 10-1859, 2013 WL 12222362, at *1 (N.D. Cal. May 2, 2013) (concluding that prisoner improperly joined claims "based on a wide variety of unrelated events that occurred at his prison").

The complaint in its current form must, therefore, be dismissed. The court will, however, grant Slavick leave to file an amended complaint, for reasons explained later in this order. If Slavick decides to file an amended complaint, he must make clear the connection between his different claims. Slavick may state several claims against a single defendant. Fed. R. Civ. P. 18. He may also state claims against multiple defendants, if those claims arise from the same transaction, occurrence, or series of transactions as his original claim. Fed. R. Civ. P. 20(a)(2). For example, Counts I, II, and III all appear to relate to the same occurrence—that is, the September 22, 2024, incident. But there is no apparent connection between this occurrence and, to take an example, the apparently separate incident described in Count VIII, in which Sgt. Gonzalez is alleged to have violently pulled on a mesh bag that Slavick was holding.

If Slavick cannot explain the connection between his claims against different defendants, he should not seek to bring all of them in a single amended complaint. Put differently, Slavick may not pursue a combination of unrelated claims in a single suit. *See Char v. Kaiser Hosp.*, No. 18-00345, 2019 WL 80890, at *3 (D. Haw. Jan. 2, 2019)

13

("Unrelated claims involving different defendants must be brought in separate actions.").  Any attempt to join claims that are not permitted by the Federal Rules of Civil Procedure will result in those claims being dismissed as improperly joined.

**D.      All Properly Joined Claims Must Be Timely**

In deciding which claims he might pursue in this lawsuit, Slavick must also consider whether those claims are timely.

As the Ninth Circuit has explained, "[b]ecause 42 U.S.C. § 1983 does not contain its own statute of limitations, actions brought pursuant to 42 U.S.C. § 1983 are governed by the forum state's statute of limitations for personal injury actions."  *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 743 (9th Cir. 2019) (citation modified).  "In Hawaiʻi, the statute of limitations for personal injury actions is two years."  *Id.*

"Although state law determines the length of the limitations period, federal law determines when a civil rights claim accrues."  *Id.* (citation modified).  "Under federal law, the 'discovery rule' typically governs the accrual of § 1983 claims so that a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *Id.* (citation modified).

The complaint includes factual allegations dating back to 2017.  *See* Dkt. No. 1, at pg. 44.  In any amended pleading that he files, Slavick must ensure that all his claims were filed within two years of his learning of the alleged injury.  To help Slavick decide

14

which claims, if any, he wants to pursue in this action, the court now provides the legal standards that would apply to the four types of claims included in the complaint.

### E.   Eighth Amendment Claims

The Eighth Amendment governs the treatment of convicted prisoners and forbids "cruel and unusual punishments."  U.S. Const. amend. VIII; *see Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021).  Although the Constitution "'does not mandate comfortable prisons,'" it does not "permit inhumane ones."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).  Prison officials may not use excessive physical force against prisoners, they "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and they must take reasonable measures to guarantee the safety of the inmates."  *Id.* (citation modified).

### 1.   Failure-to-Protect Claims

Slavick alleges that multiple officials failed to protect him at various times while he was incarcerated at HCF.  *See, e.g.,* Dkt. No. 1, at pgs. 18–19, 25–26.

"Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society."  *Farmer*, 511 U.S. at 834 (citation modified).  "Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."  *Id.* at 833 (citation modified).

To state an Eighth Amendment failure-to-protect claim, a plaintiff must allege that:  (1) "the deprivation alleged [is] objectively, 'sufficiently serious'"; and (2) the

15

prison official had a "'sufficiently culpable state of mind'" that shows "'deliberate indifference' to inmate health or safety." *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297–98, 302–03 (1991)). The "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

### 2.    Medical Care Claims

Slavick also alleges that he was denied medical care at different times at HCF. *See, e.g.,* Dkt. No. 1, at pgs. 20, 38–41.

To establish a claim of inadequate medical care, a convicted prisoner must show both a "serious medical need" and that an official's response to the need was "deliberately indifferent." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785-86 (9th Cir. 2019) (per curiam).

A serious medical need is present when, for example, the "'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* at 785 (citation modified). "Serious medical needs can relate to physical, dental and mental health." *Id.* (citation modified).

Even with a serious medical need, the plaintiff must also allege facts showing deliberate indifference. "To show deliberate indifference, the plaintiff must show that the course of treatment the official chose was medically unacceptable under the circumstances and that the official chose this course in conscious disregard of an

16

excessive risk to the plaintiff's health."  *Id.* at 786 (citation modified).  This is a "high

legal standard."  *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

"An inadvertent or negligent failure to provide adequate medical care is

insufficient to establish a claim under the Eighth Amendment."  *Edmo*, 935 F.3d at 786.

"In other words, medical malpractice does not become a constitutional violation merely

because the victim is a prisoner."  *Id.* (citation modified).

### F.      First Amendment Claims

#### 1.      Retaliation Claims

Slavick alleges multiple retaliatory acts.  *See, e.g.*, 21–24, 27–28, 31–37, 42–47.

"[A] prisoner can make a viable claim of First Amendment retaliation by alleging

five basic elements:  (1) An assertion that a state actor took some adverse action against

an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

reasonably advance a legitimate correctional goal."  *Chavez v. Robinson*, 12 F.4th 978,

1001 (9th Cir. 2021) (citation modified).

Regarding the second element, "a plaintiff must show that his protected conduct

was the 'substantial' or 'motivating' factor behind the defendant's conduct."  *See*

*Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citation modified); *see also Stephen v.*

*Williams*, Case No. 15-cv-03107, 2016 WL 1569990, at *2 (N.D. Cal. Apr. 19, 2016) ("The

omission of any facts plausibly suggesting causation is particularly problematic because

17

that causal connection—that the adverse action has been taken as payback for constitutionally-protected activity—is the very essence of a retaliation claim.").

### 2.   Claims Related to Grievances

Finally, Slavick alleges that interfered with his filing of grievances.  Dkt. No. 1, at pgs. 29–30.

Prisoners have a constitutional right of access to the courts."  *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  This "right extends to prison grievance procedures."  *Carr v. Stelzer*, 733 Fed. App'x 361, 362 (9th Cir. May 2, 2018).  When a prisoner is required to exhaust the administrative grievance process, "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system."  *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001).

To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury.  *Lewis v. Casey*, 518 U.S. 343, 349 (1996).  Actual injury "is actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim."  Id. at 348 (citation modified).  The prisoner "must identify a nonfrivolous, arguable underlying claim" and the specific remedy he lost through "allegations in the complaint sufficient to give fair notice to a defendant."  *Christopher v. Harbury*, 536 U.S. 403, 415–16 (2002)

18

(citation modified).  Failure to allege an actual injury to a nonfrivolous legal claim is fatal.  *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008).

**G.      Partial Leave to Amend the Complaint**

As noted, the court will allow Slavick an opportunity to address the deficiencies in the complaint by filing an amended complaint.  This leave to amend is limited to Slavick's claims (1) against the individual officers in their personal capacities for money damages, and (2) against the individual officers in their official and personal capacities for injunctive relief only to the extent that relief is sought based on allegations occurring at Waiawa Correctional Facility, where Slavick is currently housed.

In any amended complaint, Slavick is not authorized to reassert claims against the State of Hawaiʻi, the former DPS, or DCR (which the court has dismissed on Eleventh Amendment grounds).  Nor is he authorized to reassert claims against individual officers in their official capacities for money damages (also dismissed on Eleventh Amendment grounds).  He is not authorized to reassert claims seeking injunctive relief based on events at HCF (which the court has dismissed with prejudice on mootness grounds).  And Slavick may not expand his claims beyond those already alleged or add new claims, without explaining how those new claims properly relate to those he has raised in the original complaint.  Claims that do not properly relate to those in the complaint are subject to dismissal.

If Slavick chooses to amend his complaint, he must do so on or before September 8, 2026. Slavick must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaiʻi. Local Rule 10.4 requires that an amended complaint be complete in itself, without referencing or incorporating any part of a prior pleading. An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the Court's prisoner civil rights form. *See* LR 99.2(a). An amended complaint will supersede the preceding complaint. *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). Claims not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012).

In any amended complaint, Slavick must say when the events allegedly occurred. He must also specify how each defendant allegedly violated his rights. Finally, to the extent that Slavick's claims involve different issues, each claim should be limited to a single issue and should be stated in a separate count. For example, if Slavick alleges that a prison official at HCF failed to protect him, the facts supporting such a claim should be set forth in one count. Any additional claims presenting different issues, against either the same prison official or other prison officials based on the same transaction, occurrence, or series of transactions or occurrences, should each be laid out in a separate count. Each count should expressly state which defendant it is brought against.

20

**H.      Strikes Under 28 U.S.C. § 1915(g)**

If Slavick fails to file an amended complaint or is unable to amend his claims to cure their deficiencies, a subsequent dismissal may count as a "strike" under 28 U.S.C. § 1915(g).  Under this "three-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  If, however, Slavick decides to voluntarily dismiss this action pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure and does so on or before September 8, 2026, such dismissal will not count as a strike against him.

## CONCLUSION

(1)  The complaint, Dkt. No. 1, is DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A; namely, Slavick's claims against the State of Hawaiʻi, the former DPS, DCR, any claims for money damages against individual defendants in their official capacities, and claims for injunctive relief based on events at HCF, are DISMISSED with prejudice, and his other claims are DISMISSED without prejudice.

(2)  Slavick is GRANTED partial leave to amend and must file any amended pleading on or before September 8, 2026.

21

(3)  Failure to timely file an amended pleading may result in AUTOMATIC DISMISSAL of this suit without further notice, and Slavick may incur a strike under 28 U.S.C. § 1915(g).

(4)  ALTERNATIVELY, Slavick may voluntarily dismiss this action pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure on or before September 8, 2026, and such a dismissal will not count as a strike under 28 U.S.C. § 1915(g).

(5)  The Clerk is DIRECTED to send Slavick a blank prisoner civil rights complaint form so that he can comply with this order if he decides to pursue any of his claims.

IT IS SO ORDERED.

DATED:  August 7, 2026, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

---

*Chris Slavick v. State of Hawaii*, et al.; Civil No. 26-00361 MWJS-RT; ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND